CR 21-169 WMW/HB

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

                Plaintiff,

v.

HAROLD BENNIE KAEDING,

                Defendant.

**INDICTMENT**

18 U.S.C. § 1343
18 U.S.C. § 1957
18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)

The UNITED STATES GRAND JURY charges that:

## INTRODUCTION

At times relevant to this Indictment:

1.  From at least in or about April 2020 through in or about December 2020, the defendant, HAROLD BENNIE KAEDING, capitalized on the COVID-19 pandemic to exploit emergency funding mechanisms to knowingly submit numerous false and fraudulent applications to receive loan proceeds he knew he was not entitled to receive.   KAEDING used false and fraudulent pretenses, representations, promises, and concealment of material facts to apply for at least $2,182,625 in such loans, of which KAEDING obtained $658,490 in fraud proceeds.   KAEDING knowingly used these criminally derived proceeds to engage in monetary transactions exceeding $10,000 for the benefit of himself and his family.

### *The Defendant and Related Entities*

2.  Defendant HAROLD KAEDING was a resident of Eden Prairie, in the State and District of Minnesota.



SCANNED
AUG 04 2021
U.S. DISTRICT COURT MPLS

United States v. Harold Bennie Kaeding

3. Harbor Holdings Corporation was a Minnesota corporation formed on or around March 26, 2019, with its registered agent located at 3208 West Lake Street #1076, Minneapolis, Minnesota, 55416. This address was a PostNet box at which KAEDING last received mail in or about May 2020. The registered agent for Harbor Holdings Corporation was listed as Erika Parks.

4. Harbor Corp was a Minnesota corporation formed on or around April 24, 2020. Its registered address was the same as Harbor Holdings Corporation. The incorporator of Harbor Corp also was listed as Erika Parks.

5. AutoPay, Inc., was a Minnesota corporation formed on or around October 30, 2007. Although AutoPay administratively dissolved on or about January 7, 2009, it filed for reinstatement on or about April 25, 2020. AutoPay's registered address was listed as 1160 Vierling Drive East #127, Shakopee, Minnesota, 55379. AutoPay's Chief Executive Officer was identified as KAEDING's spouse with a registered executive address that was the same as Harbor Holdings Corporation and Harbor Corp.

6. Voyager Shipping Company was originally registered in the State of Minnesota on or about March 2, 2012, before being administratively dissolved on or about April 16, 2014. Voyager Shipping Company filed for reinstatement on or about May 15, 2020, with the same registered address as AutoPay.

7. The identified entities filed no tax returns for calendar years 2019 and 2020. Moreover, the identified entities did not report to the State of Minnesota the payment of any wages to a single employee in 2019 and 2020.

United States v. Harold Bennie Kaeding

### The U.S. Small Business Administration

8.     The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

9.     As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders.  These loans have government-backed guarantees.

### CARES Act, Paycheck Protection Program, and Relief Funding

10.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

11.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan

3

United States v. Harold Bennie Kaeding

application (SBA Form 2483), the small business (through its authorized representative) was required to certify, among other things: (a) that the small business was in operation on February 15, 2020; (b) average monthly payroll expenses; and (c) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

12.     A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

13.     PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

14.     The SBA also sponsors Economic Injury Disaster Loans (EIDL), which is a separate loan mechanism for economic relief. The SBA provides these loans as

United States v. Harold Bennie Kaeding

"economic relief to small businesses and nonprofit organizations that are currently experiencing a temporary loss of revenue."

## THE SCHEME TO DEFRAUD

15.     From at least April 2020 through at least in or around December 2020, in the District of Minnesota, and elsewhere, the defendant,

### HAROLD BENNIE KAEDING,

did knowingly and intentionally devise and execute a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

16.     It was part of the scheme to defraud that from at least in or about April 2020 through at least in or about June 2020, KAEDING knowingly applied for various PPP and EIDL funds by submitting knowingly false and fraudulent applications to various lenders.  Every application KAEDING submitted included knowingly false representations.  The purpose of the scheme was for KAEDING to unjustly enrich himself by obtaining PPP and EIDL loan proceeds under false and fraudulent pretenses, including by submitting fabricated supporting records, making false statements about the number of employees and the amount of payroll expenses, and making false statements about the intended use of the loan proceeds.

17.     More specifically, in furtherance of the scheme, between in or about April and May 2020, KAEDING submitted three false and misleading PPP applications—one for Harbor Holdings Corporation, one for Harbor Corp, and one for AutoPay—seeking a total of $504,090 in PPP funds.  KAEDING submitted these

United States v. Harold Bennie Kaeding

applications with numerous knowingly false representations, examples of which include the following:

- Submitting applications and completing the required certifications using the identifying information of other individuals.

- Misrepresenting the number of active employees on payroll.

- Including a knowingly bogus monthly payroll figure.

- Submitting knowingly falsified supporting documentation, such as forged tax return documents or bogus bank account statements.

- Misrepresenting various information in order to qualify under PPP loan requirements, such as dates of incorporation or that the applicant had not applied for or received other PPP funding.

18.     As a direct result of KAEDING's material falsehoods and omissions, between April and May 2020, lenders approved these PPP applications and deposited $504,090 in PPP funds into bank accounts that KAEDING opened and controlled. Thereafter, KAEDING transferred this money to various other bank accounts that he controlled and could access for the purpose of converting the money to his own purposes.

19.     It was further part of the scheme that KAEDING applied for at least 5 other PPP loans.  KAEDING applied for these additional loans, in his own name or that of others, despite PPP requirements—which KAEDING initialed and certified on every application he submitted—that the applicant "has not and will not receive

United States v. Harold Bennie Kaeding

another loan under the Paycheck Protection Program" for the period of February 15, 2020, through December 31, 2020."

20.     Each of these five additional applications contained either false claims, fabricated supporting documents, or both.  The additional applications sought PPP funding for, respectively, Harbor Corp, Harbor Holdings Corporation, AutoPay, Voyager Shipping Company, and AutoPay d/b/a Harbor.  In total, the five additional applications sought $1,362,435 in PPP funds.  Although $984,180 in this funding initially was approved and deposited into bank accounts KAEDING controlled— $242,090 for AutoPay and $742,090 for Voyager Shipping Company—the lending banks successfully recalled the full $984,180 in PPP funding.  The other $378,255 in applied-for PPP funds for Harbor Corp and Harbor Holdings Corporation was denied prior to funding.

21.     It was further part of the scheme that KAEDING fraudulently applied for at least four EIDLs. Each of these four applications contained either false claims, fabricated supporting documents, or both.  In total, the four applications sought $316,100 in EIDL funding.  KAEDING received $154,400 in fraudulent EIDL proceeds that he thereafter transferred to various other bank accounts that he controlled or could access for the purpose of converting the money to his own purposes.

22.     In total, as a result and in furtherance of his scheme to defraud, KAEDING received approximately $658,490 in fraud proceeds, some of which he distributed and misappropriated, or attempted to distribute and misappropriate, for

United States v. Harold Bennie Kaeding

the personal benefit of himself and other parties in violation of PPP and EIDL requirements.   Rather than use PPP and EIDL funds for permissible business expenses, KAEDING instead transferred the $658,490 to bank accounts that he controlled and for his personal use.   More specifically, KAEDING withdrew at least $84,200 in cash from numerous ATMs and used $80,000 to make a substantial payment against a home mortgage to avoid the foreclosure of the personal residence in which KAEDING was living.  KAEDING also used his fraud proceeds to wire funds and provide cash to various family and friends.  For example, on or about June 3, 2020, KAEDING wired $51,000 of fraud proceeds directly to his spouse's bank account.

23.    In total, KAEDING's fraud scheme sought at least $2,182,625 of which KAEDING obtained $658,490 in fraud proceeds.  KAEDING misappropriated these proceeds for the personal benefit of himself and others.

## COUNT 1
### (Wire Fraud)

24.    Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

25.    On or about the date set forth below, in the State and District of Minnesota and elsewhere, the defendant,

## HAROLD BENNIE KAEDING,

for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by

8

United States v. Harold Bennie Kaeding

means of wire communications in interstate and foreign commerce, certain writings, signs, signals, and sounds, as described below:

| Count | Date of Wire (on or about) | Wire |
|-------|---------------------------|------|
| 1 | May 21, 2020 | Wire communication of PPP Application 3 sent and caused to be sent by KAEDING from Minnesota through interstate servers located outside of Minnesota. |

All in violation of Title 18, United States Code, Section 1343.

### COUNT 2
(Money Laundering)

26.    Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

27.    On or about June 3, 2020, in the State and District of Minnesota, the defendant,

**HAROLD BENNIE KAEDING,**

did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000—namely, KAEDING wired $51,000 from a Harbor Holdings Corporation bank account at Bank of America to a bank account at Citibank held in his spouse's name—which money was derived from a specified unlawful activity—namely, wire fraud—all in violation of Title 18, United States Code, Section 1957.

United States v. Harold Bennie Kaeding

## FORFEITURE ALLEGATIONS

28.     Counts 1 and 2 of this Indictment are incorporated by reference for the

purpose of alleging forfeiture pursuant to Title 18, United States Code, Section

981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), and

Title 18, United States Code, Section 982(a)(1).

29.     Upon conviction of the offense alleged in Count 1, as set forth in this

Indictment, defendant shall forfeit to the United States of America, pursuant to Title

18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section

2461(c), any property, real or personal, which constitutes or is derived from proceeds

traceable to the violation.  The property subject to forfeiture includes, but is not

limited to, the following:

a.      $91,207.00 seized January 13, 2021 from the residence at 7571 Atherton Way, Eden Prairie, Minnesota;

b.      the real property and premises located at 7571 Atherton Way, Eden Prairie, Minnesota, 55346, legally described as Lot 1, Block 4, Round Lake Estates, Second Addition, Hennepin County, with property tax ID number 08-116-22-32-0033;

c.      a 2017 GMC Acadia with VIN 1GKKNXLS2HZ256796 seized June 30, 2021;

d.      $1,018.92 seized from Royal Credit Union Account 4569474440 held in the name of Harbor Holdings Corporation;

e.      $21,983.16 seized from Bank of America account number 374004337463 held in the name of Harbor Holdings Corporation;

f.      $11,144.50 seized from NorthOne/Radius Bank account number 5110103119 held in the name of AutoPay, Inc.;

United States v. Harold Bennie Kaeding

    g.    $13,297.00 seized from NorthOne/Radius Bank account number 7160013442 held in the name of Voyager;

    h.    $34,200.00 seized from Royal Credit Union account number 4561219975 held in the name of Zoraida E. Franco;

    i.    $119,164.27 seized from Citibank account number 162119187 held in the name of Zoraida Franco;

    j.    $4,031.02 seized from Spire Credit Union checking account number 10100000776062 held in the name of Voyager Shipping Corp;

    k.    $5,016.23 seized from Spire Credit Union savings account number 10000000776062 held in the name of Voyager Shipping Corp;

    l.    $8,321.74 seized from Key Bank account number 776920002263 held in the name of Ben Kaeding; and

    m.    $5,039.36 seized from Key Bank account number 354153030680 held in the name of Ben Kaeding.

30.    Upon conviction of the offense alleged in Count 2, as set forth in this Indictment, defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

31.    If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____    _____
ACTING UNITED STATES ATTORNEY    FOREPERSON

11