UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-169 (ECT/HB)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

HAROLD BENNIE KAEDING,

      Defendant.

**MOTION TO DETAIN DEFENDANT PENDING TRIAL**

    Defendant Harold Bennie Kaeding's risk of nonappearance is apparent from his own actions. Kaeding used his wife and son's identities to fraudulently apply for over $2 million in COVID-relief loans, received over $650,000 in fraud proceeds, and then—after learning of the government's investigation—fled to Colombia (using a second passport) to avoid accountability. Kaeding then resisted numerous overtures to voluntarily return to the United States, which required the government to seek his involuntary removal from Colombia. Kaeding's intransigence persisted even after Colombian officials located him. Instead of cooperating, Kaeding refused to open his apartment door and strung authorities along long enough to flee to another location. Colombian authorities finally located Kaeding at a local clinic, at which time he exaggerated his claimed medical conditions and refused to tender his passport to facilitate his removal. The government moves for his detention pending trial.

## BACKGROUND

    Kaeding is indicted for applying for at least $2,182,625 in COVID-relief loans via 12 separate applications under knowingly false and fraudulent pretenses. (Dkt. 1.) Every application included knowingly false representations, including fabricated

supporting records, bogus business information, and blatant misstatements about the use of the proceeds. Also, instead of using his own name, Kaeding submitted these fraudulent applications using the personal identifying information of his family. This had the unfortunate consequence of ensnaring them in this investigation. Because the Indictment fully details the mechanics of Kaeding's fraud scheme, the government will instead focus on how Kaeding's actions highlight his clear risk of nonappearance.

In mid-January 2021, the government seized over $220,000 from numerous bank accounts related to Kaeding's fraud scheme. The government simultaneously executed a search warrant at Kaeding's residence and located over $90,000 in cash alongside various ATM withdrawal receipts from bank accounts tethered to the fraud scheme.[1] The government also seized Kaeding's passport along with a Minnesota ID Card bearing Kaeding's picture but issued in the name of Benjamin Michael Strand. Kaeding also possessed a Social Security Card in the name of Benjamin Michael Strand. *See* Gov't Ex. 1. Kaeding voluntarily spoke with law enforcement and admitted that he—and not his family members—submitted the suspect COVID-relief loans. The parties entered resolution discussions and Kaeding requested a plea offer. However, on April 23, 2021, Kaeding changed his mind and declined a pre-indictment resolution.

---

[1] The government also seized a $34,000 vehicle purchased with fraud proceeds and traced another $80,000 in payments against Kaeding's residence. This leaves an additional $231,000 in unaccounted-for fraud proceeds.

On May 1, 2021, just eight days after rejecting the plea offer, Kaeding fled the United States for Colombia. This travel is how the government learned that Kaeding apparently possessed *two* valid U.S. passports—one in the name Harold Kaeding and another in the name Benjamin Kaeding. The only known connection between Kaeding and Colombia is through his wife, who emigrated from Colombia and maintained an apartment there to visit family. The government is unaware of any previous time when Kaeding traveled alone to Colombia. Regardless, Kaeding cancelled his return flight, repeatedly misled his family about his intention to return home, and ultimately hunkered down in Colombia.

On August 4, 2021, a grand jury returned a sealed indictment against Kaeding for his fraud scheme. The government contacted Kaeding's lawyer (at that time) to discuss his whereabouts and encourage his voluntary return to the United States.[2] The government clearly indicated that Kaeding's refusal to return voluntarily could lead to deportation or extradition—a reality that would require considerable resources and could lead to lengthy detentions for Kaeding while facilitating his return. Kaeding responded that he would not return unless the government agreed to a litany of nonsensical demands. The government responded that Kaeding had until late-September to return voluntarily or face deportation or extradition. Kaeding opted to remain in Colombia.

As promised, the government began a months-long process to marshal considerable resources—both stateside and abroad—to locate Kaeding and facilitate

---

[2] If disputed, the government can produce e-mail communications with Kaeding's former attorney.

3

his removal. On November 1, an attorney hired by Kaeding from New York contacted the government "to assist Mr. Kaeding concerning his criminal matters and potential extradition/deportation." The New York attorney expressed hope that "we can work together to resolve this matter as quickly and simply as possible." The government immediately reiterated its hope that Kaeding voluntarily return to the United States: "The government has repeatedly advised [Mr. Kaeding] that it is time to voluntarily return to the United States. Mr. Kaeding has missed deadlines to do so, and the government will continue to proceed accordingly." Once again, Kaeding opted to remain in Colombia.

On November 5, 2021, Colombian authorities located Kaeding at his wife's apartment in Barranquilla, Colombia. Kaeding responded by refusing to open the apartment door. Authorities returned the next day and Kaeding simply refused to acknowledge their presence. Instead, an English-speaking Colombian immigration officer successfully contacted Kaeding via telephone. Kaeding agreed to a November 9 appointment at a local Colombian immigration office. Kaeding then cancelled the appointment ostensibly because his wife had arrived in Colombia to visit him and rescheduled for November 11. The government immediately confirmed that Kaeding's wife remained at her residence in Eden Prairie, Minnesota.

Colombian authorities returned to Kaeding's apartment early on November 10 armed with a search warrant. But Kaeding already had fled the apartment. Kaeding's wife confirmed the apartment now was empty and explained that he was renting a bedroom elsewhere, but she did not provide the location. Colombian authorities reached out to Kaeding via text message. He responded that he would

not meet with Colombian authorities until they had an agreement with his New York lawyer.

Later that evening, on November 10, Kaeding checked himself into a local clinic in Barranquilla complaining of chest pain. Colombian authorities advised that Kaeding did not have a heart attack and was instead admitted for observation. On November 11, Kaeding's New York lawyer contacted the government to relate that Kaeding "had a heart attack and is in ICU at a local hospital in Barranquilla. [Kaeding] indicates that he will be admitted to surgery tomorrow to analyze his arteries." This was untrue. Instead, Kaeding was treated for high blood pressure and a skin condition. Kaeding was released on November 12 to the custody of Colombian immigration for deportation.

Once again, Kaeding refused to cooperate. Kaeding refused to provide the location of his passport to facilitate a smooth deportation. Kaeding also refused to provide the location of his rented room to permit authorities to determine if his passport was in that location. Moreover, Kaeding refused to be photographed to facilitate workarounds to deport him without his passport. Despite his best efforts, authorities from Colombia and the United States ultimately completed the logistics of successfully deporting Kaeding from Colombia. Kaeding arrived in Miami on November 13, made a November 15 appearance in the Southern District of Florida, and ultimately waived further proceedings until his arrival in the District of Minnesota.

**Argument**

Kaeding committed his fraud in the name of others, possessed false IDs, fled the Country using a secondary passport, refused numerous opportunities to return, repeatedly evaded Colombian authorities, and then actively refused to cooperate in his removal. Kaeding's risk of nonappearance is apparent, and he should be detained pending trial.

Pretrial detention based on risk of nonappearance is warranted when the Court, after a hearing, determines that no condition or combination of conditions will reasonably assure the defendant's future appearance. 18 U.S.C. § 3142(e)-(g). The government must establish risk of nonappearance by a preponderance of the evidence. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). Risk of nonappearance alone is sufficient to warrant pretrial detention. *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

Kaeding's own actions establish his risk of nonappearance well beyond a preponderance of the evidence. Kaeding faces serious charges for capitalizing on a national emergency to execute a multi-million-dollar fraud scheme. Despite the weight of the evidence against him—including the fruits of the search and seizure warrants and his own inculpatory statements—Kaeding exploited a preindictment opportunity to flee the *country*. This not only underscores his effort to evade prosecution but highlights the apparent minimal value Kaeding places on his own family and community ties in Minnesota. Kaeding not only committed his crimes in the name of his family members, but he had no issues abandoning them for over half a year in favor of a foreign country with which he had limited familiarity. Kaeding

6

risk of nonappearance is even more apparent from his decision to ignore numerous overtures—from the government and his own family—to voluntarily return to the United States.

Kaeding only doubled down after Colombian authorities located him. He refused to engage, lied about his wife visiting (once again entangling his family in his legal troubles), and used the delay to flee to yet another undisclosed location. With his options dwindling, Kaeding checked himself into a local clinic complaining of chest pain. Kaeding related he'd suffered a heart attack, was admitted to the ICU, and faced impending surgery. Instead, he was admitted for observation, treated for routine complaints, and released days later to Colombian authorities. Even then, Kaeding did all he could to avoid his removal by refusing to provide his passport, provide his location, or be photographed to facilitate his deportation.

The government predicts Kaeding will claim his medical issues warrant his release. But, once again, Kaeding's own actions undercut such an assertion. Kaeding's medical conditions have never impeded his ability to flee. They did not prevent him from fleeing the country, alone and unassisted, and providing for himself in a foreign country for over six months. They did not prohibit him from fleeing his Colombian apartment—again alone and unassisted—for another undisclosed location after Colombian authorities located him. Kaeding also appears to exaggerate his health claims to garner sympathy or avoid consequences. Kaeding's self-reported heart attack, ICU admission, and impending surgery were debunked by his release days later. Kaeding similarly appears to embellish his hearing impairment. Kaeding had no issues hearing government counsel during a meeting in early 2021, Colombian

authorities spoke to Kaeding via phone when he refused to open his apartment door, and Kaeding responded unprompted to his lawyer during his initial appearance earlier this week. Put simply, under the applicable legal analysis, Kaeding's purported medical issues would not outweigh the evident risk of his nonappearance. Moreover, Keading will be eligible to receive medical care and monitoring throughout his pretrial detention.

## Conclusion

Kaeding actions establish a clear risk of nonappearance. Kaeding committed his crimes in the names of other people, possessed a fake ID and used a secondary passport to flee the country, and actively ignored, avoided, and impeded authorities on numerous occasions. Kaeding has squandered any benefit of the doubt. The preponderance of the evidence establishes that no condition or combination of conditions will reasonably assure Kaeding's appearance as required. He should be detained pending trial.

Dated: January 6, 2022                    Respectfully Submitted,

CHARLES J. KOVATS, JR.
Acting United States Attorney

*/s/ Jordan L. Sing*

BY: JORDAN L. SING
Assistant U.S. Attorney