UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | |
| Plaintiff, | Case. No. 21-CR-169 (ECT/JFD) |
| v. | **ORDER** |
| Harold Bennie Kaeding, | |
| Defendant. | |

---

This case is before the Court on pro se Defendant Harold Bennie Kaeding's Motion to Reopen Detention (Dkt. No. 111) and his Motion for an indefinite extension of time (Dkt. No. 152) in which to file memoranda in support of his motions to suppress evidence (Dkt. Nos. 74, 77, 78). The Court addresses both Mr. Kaeding's detention motion and his continuance motion in the same order because they are interrelated. Mr. Kaeding asks for a motion deadline following his release from detention. The premise of Mr. Kaeding's extension motion is incorrect—he is not going to be released from detention—but the Court will grant Mr. Kaeding a final four-week extension. No more extensions will follow.

A detention hearing may be reopened if information that was not known at the time of the original detention hearing comes to light, and the new information has an effect on the detention decision. 18 U.S.C. § 3142(f). The motion to reopen detention is denied because Mr. Kaeding does not meet those standards. Although Mr. Kaeding's motion does present the Court with information that was not known at the time the Court originally ordered Mr. Kaeding detained, that is only half of what the Bail Reform Act requires. The

new information must also have a material bearing on the issue of detention and this new information does not. The Court finds that even factoring the new information into the detention analysis, Mr. Kaeding still poses not only a serious risk of flight but also a serious risk of obstruction of justice and financial danger to the community. In addition, despite industrious efforts by the Court, Mr. Kaeding's former counsel, and the U.S. Attorney's Office, no community placement option has been found for Mr. Kaeding. This means there is no alternative to detention because there is no condition or set of conditions, other than detention, that will reasonably assure Mr. Kaeding's appearance in court and the safety of any other person or the community. The motion to reopen detention is accordingly denied and Mr. Kaeding will remain in detention pending trial.

    Mr. Kaeding's extension motion is granted in part and denied in part. These motions have been pending since October of last year. As can be seen from the title of the motion, the motion before the Court is the fifth motion for an extension. While the Court does not doubt that Mr. Kaeding's pretrial detention is some hinderance to his efforts to prepare memoranda, he has shown himself capable, through pro se filings he has made, of preparing legal documents even while in detention. The Court grants Mr. Kaeding a four-week extension and will not grant any further extensions. Mr. Kaeding will file his supporting memoranda on or before October 20, 2023. If he fails to do so, the Court will thoroughly review the record and then issue a report and recommendation on the suppression motions for the district court judge, the Honorable Eric. C. Tostrud.

## I. BACKGROUND

### A. The Charges

In a superseding indictment (Dkt. No. 105) filed on January 25, 2023, Mr. Kaeding was charged with three counts of wire fraud, in violation of 18 U.S.C. § 1343; three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); and one count of money laundering, in violation of 18 U.S.C. § 1957.

The allegations of the superseding indictment describe a months-long scheme Mr. Kaeding perpetrated to defraud federal government programs meant to alleviate the economic distress caused to the American people by the COVID-19 pandemic. Mr. Kaeding allegedly submitted false applications for over two million dollars in COVID-19-related loans, of which Mr. Kaeding received approximately $658,000. Another $984,100 was disbursed but then "clawed back" by the issuing banks, and a further $378,255, although applied for, was never disbursed because it was denied outright. (Superseding Indictment at ¶¶ 17–23.) Mr. Kaeding applied for loans in the names of Harbor Holdings Corporation, Harbor Corp, AutoPay, Inc., and Voyager Shipping Company. (*Id.* at ¶¶ 17, 20.) Some of these corporations were recently established, while others were long-dissolved corporations that Mr. Kaeding allegedly revived to use as recipients of fraud proceeds. For example, AutoPay was formed on October 30, 2007 and was dissolved on January 7, 2009. Mr. Kaeding brought it back to life on April 25, 2020. (*Id.* at ¶ 5.) AutoPay applied for a COVID-19 relief loan on May 21, 2020 and a second one later. (*Id.* at ¶¶ 17, 20.) To facilitate this fraud, Mr. Kaeding allegedly used the identifying information of his

own family members. (Pl.'s Response to Def.'s Mot. to Reconsider Det. 1, Dkt. No. 114; Indictment ¶¶ 17, 19.)

### B. The Court's Original Detention Decision

When he learned he was under investigation, Mr. Kaeding attempted to negotiate a pre-indictment resolution of the potential case against him with the United States Attorney's Office, but Mr. Kaeding stopped negotiating in late April of 2021. He left the United States on May 1, 2021 and traveled to Colombia, the home country of his wife, using a U.S. Passport in the name of "Benjamin Kaeding." Although Mr. Kaeding bought a round-trip air ticket, he did not catch his return flight to the United States.

On August 4, 2021, a grand jury indicted Mr. Kaeding for one count of wire fraud and one count of money laundering. (Dkt. No. 1.) In a detention order (Dkt. No. 28) issued after Mr. Kaeding eventually appeared in court on the original indictment, a magistrate judge recounted what happened after Mr. Kaeding was indicted:

A warranted search of Mr. Kaeding's residence in January 2021 turned up $90,000 in cash, numerous financial documents, ATM receipts, a Minnesota ID Card in the name of "Benjamin Michael Strand" but with Mr. Kaeding's photograph, a Social Security Card in the name of "Benjamin Michael Strand," and Mr. Kaeding's expired U.S. Passport.

The magistrate judge then found that the prosecution, through Mr. Kaeding's lawyer, tried to negotiate Mr. Kaeding's voluntary return to the United States. During these negotiations, the prosecutors clearly indicated that if Mr. Kaeding refused to return he could be extradited from Colombia, a process that the magistrate judge found "would be more difficult than the defendant returning on his own." As noted above, on May 1, Mr.

Kaeding flew to Colombia and on August 4, 2021, while he was still in Colombia, the grand jury returned its initial indictment in this case.

On November 5, 2021, Colombian authorities located Mr. Kaeding at his wife's apartment in Barranquilla. Mr. Kaeding would not open the door for the Colombian officials but agreed to meet at a local immigration office—an appointment he later canceled, falsely claiming his wife had joined him in Colombia (investigators found she had never left the United States).

On November 7, 2021, the Colombian authorities returned to the Barranquilla apartment with a search warrant but found the apartment empty. Mr. Kaeding replied to texts sent by the Colombian authorities by saying he would not meet with them absent an agreement with his legal counsel, though the record does not specify what sort of agreement Mr. Kaeding sought. The police located Mr. Kaeding when he checked into a Colombian health clinic. Mr. Kaeding claimed he had suffered a heart attack and was scheduled for surgery, but in fact, he had been admitted for high blood pressure and was released by the clinic to the custody of Colombian immigration—without surgery.

Mr. Kaeding would not cooperate in his return to the United States. He refused to surrender his passport, nor would he tell the authorities where it was. This meant the State Department had to issue an emergency passport to allow Mr. Kaeding's return to the United States, but Mr. Kaeding would not allow himself to be photographed for that emergency passport. Despite these obstructionist tactics, Mr. Kaeding was eventually expelled from Colombia. He arrived in Miami on November 13, 2021.

Based on these facts, the Court ordered Mr. Kaeding detained on the grounds that no condition or combination of conditions would reasonably assure Mr. Kaeding's appearance at future court proceedings. 18 U.S.C. § 3142(g). The Court specifically stated it was not premising detention on the Bail Reform Act's alternate ground of danger to any other person or the community.

### C. The Efforts to Find a Suitable Placement for Mr. Kaeding

The question of Mr. Kaeding's pretrial detention has continued to be active—and difficult—in the year and a half since the Court ordered Mr. Kaeding detained. That history's length is attributable mostly to efforts to find an appropriate facility in which Mr. Kaeding could be detained, in the face of constant assertions by Mr. Kaeding of serious illness as well as allegations that his detention made it impossible for him to either file motions or, once motions were filed, respond to the prosecution's motions or file a memorandum in support of his own suppression motion.

Mr. Kaeding was granted five extensions of time in which to file motions. A sixth motion for a continuance of time to file was denied. (*See* Dkt. No. 31 (first motion for a continuance, docketed on January 26, 2022, seeking a 30-day extension of time to file pretrial motions, not opposed by the prosecution, granted on January 27, 2022 at Dkt. No. 34); Dkt. No. 36 (second continuance motion, docketed on March 2, 2022, seeking a 45 day continuance, not opposed by the prosecution, granted on March 3, 2022 at Dkt. No. 37); Dkt. No. 42 (third motion for a continuance, docketed on April 19, 2022, not opposed by the prosecution, seeking another 45 day continuance, granted on April 20, 2022 at Dkt. No. 43); Dkt. No. 50 (fourth motion for a continuance, seeking a 60-day continuance, not

opposed by the prosecution, filed on June 9, 2022 and granted on June 9, 2022 at Dkt. No. 53); and Dkt. No. 58 (fifth motion for a continuance, docketed on August 10, 2022, seeking a 60-day extension, not opposed by the prosecution, granted on August 15, 2022 at Dkt. No. 59)). The referenced documents go into more detail than does this Order, but recurring themes in support of the extension requests were that Mr. Kaeding protested that he was ill, or that it was awkward for him to communicate with counsel, or that his mobility issues made it difficult for him to access a computer. During this time, Mr. Kaeding was frequently sent to the emergency room of a local hospital by the Sherburne County Jail but was always discharged back to Sherburne County without being admitted to the hospital.

During the time that these continuances were being requested and granted, Mr. Kaeding's attorneys, with the assistance of a social worker, were exploring community housing options for Mr. Kaeding, while the prosecutors were in discussions with the Bureau of Prisons ("BOP") about whether Mr. Kaeding could be moved to a BOP medical facility. Both efforts were unsuccessful. The BOP was unwilling, at least at that time, to accept a pretrial detainee, and funding for community housing was impossible to arrange. In addition, the prosecution, noting Mr. Kaeding's history of dishonesty and using others to facilitate his fraud schemes, was reluctant to accede to any terms of release that would allow Mr. Kaeding access to the internet or bank accounts. On July 5, 2022, after a nationwide search for a suitable placement, the Court ordered that Mr. Kaeding be transported to a private-sector medical facility in Columbia, South Carolina that would accept federal pretrial detainees. To the Court's knowledge this facility was the only one in the United States that was an option for Mr. Kaeding's pretrial detention. As can be seen

in the preceding paragraph, Mr. Kaeding filed his fifth motion for a continuance of the motions hearing from Columbia, South Carolina. Throughout these proceedings, the prosecution expressed its concerns that Mr. Kaeding was malingering, noting the incident in Colombia when Mr. Kaeding was found to be suffering from high blood pressure after he stated he had suffered a heart attack and was scheduled for surgery, and the inability of medical staff at a local hospital to diagnose Mr. Kaeding with an illness with severity commensurate to the symptoms he was claiming to Sherburne County Jail's medical staff. The prosecution also noted that Mr. Kaeding, in South Carolina, had acted against medical advice, and consequently suffered a spinal fracture and had to be transported to a hospital. (Dkt. No. 88-3, at 7).

Mr. Kaeding made a sixth motion for a continuance of his motions filing deadline while in South Carolina. (Dkt. No. 63.) The United States objected, and the Court denied the motion. (Dkt. Nos. 64, 75.) Mr. Kaeding responded by promptly filing nine pretrial motions. (Dkt. Nos. 65 – 68, 70 – 74.) When the Court directed Mr. Kaeding to provide additional factual details about two of his motions, Mr. Kaeding responded with the required information within a week. (Dkt. No. 76 (Court's order to provide additional facts, October 18, 2023); Dkt. Nos. 77, 78 (amended motions, filed October 25, 2023)).

Mr. Kaeding stayed in South Carolina until the spring of 2023. The BOP agreed to take Mr. Kaeding—and the Court is very grateful to the BOP for doing so—and Mr. Kaeding was being detained at FMC-Rochester when his motions hearing and arraignment were held on April 28, 2023. (Dkt. Nos. 117, 118.)

Despite his complaints about the difficulty of communicating from his present detention, Mr. Kaeding has filed at least four pro se communications with the Court (Dkt. Nos. 148 (three page document, with three attached exhibits), 139 (two page letter to the district judge seeking appointment of new counsel), 126, and 122). In addition, at a time when Mr. Kaeding apparently did not have his attorneys' mailing address, Mr. Kaeding sent communications to the Court with a request that they be forwarded to his attorneys. Because of concern that the documents were probably attorney-client privileged, the Court did not examine them, but did note that the documents were lengthy, single-spaced documents. At a hearing, Mr. Kaeding also complained that a 20-page draft of a motion he had written had not been edited by his lawyers even though he had asked them to do that. (Dkt. No. 136, transcript of May 25, 2023 hearing, p. 18).[1]

Efforts to find a suitable community placement for Mr. Kaeding have continued, but have been unsuccessful, mostly because funding for such a placement continues to be a challenge, but also because of apprehension that Mr. Kaeding, once out of custody, will revert to what he is alleged to have done in the superseding indictment—manipulate family members and friends to commit fraud on his behalf.

Mr. Kaeding asked the Court to allow him to represent himself. The Court held a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975) on August 14, 2023 and advised Mr. Kaeding, emphatically, that he was being very unwise in discharging his counsel. Mr. Kaeding was not swayed and the Court was obliged to grant the motion. (Dkt.

---

[1] The Court attempted to explain to Mr. Kaeding that editing Mr. Kaeding's writing was not counsel's responsibility.

9

No. 147.) Mr. Kaeding now represents himself, Ms. Mohrlant is stand-by counsel, and Mr. Johnson is off the case but will return as stand-by counsel if the case goes to trial. Mr. Kaeding's discharge of his counsel, notes the United States, means that there are no longer defense attorneys who can investigate this case, liaise with witnesses, use the internet for research, and handle funds needed for housing and litigation costs. Because Mr. Kaeding is now self-represented, all of these acts will need to be taken by him.

## II. ANALYSIS

The long recitation of the facts and procedural history of this case shows that Mr. Kaeding claimed to be unable to file motions until his sixth motion for a continuance of the filing date was denied, at which point a number of pretrial motions were immediately filed; claimed to be unable to provide input on a memorandum in support of two suppression motions since April of this year, but was able to file multiple pro se letters with the Court, and provide his counsel with 20-page draft motions; claimed to have suffered a heart attack in Colombia and to be scheduled for surgery, when he in fact had high blood pressure; failed to follow medical advice, both here in Minnesota and during his time in South Carolina, resulting in Mr. Kaeding's medical situation growing worse; and frequently complained of symptoms which professional medical staff cannot substantiate, or alternatively cannot substantiate at anything near the seriousness with which Mr. Kaeding claims for them.

Despite his physical limitations, Mr. Kaeding remains a flight risk. The Court accepts that Mr. Kaeding is not as much of a flight risk as he was, but with access to funds

and the internet, Mr. Kaeding can arrange to absent himself from court. He has fled once to South America,[2] and he has consistently manipulated his medical situation to postpone litigation. While the Court does not doubt that Mr. Kaeding has faced genuine communications problems, the Court also finds it not credible that (1) the conditions of his pretrial detention alone caused him to take more than ten months to consult with counsel about what motions to file, or (2) that he has not had the opportunity to provide input on three fairly straightforward suppression motions that were filed in October of 2022 and heard on April 28, 2023. The Court's conclusion in this regard is buttressed by the pro se letters Mr. Kaeding has been able to compose, his long outlines that he has sought to introduce into the record, and his decision to represent himself, which shows he is capable of making arguments on his own behalf when he wishes to do so. The Court, having granted five motions for continuances to file pretrial motions, and five motions for extensions of time in which to file a memorandum in support of two of those motions, can no longer regard Mr. Kaeding's dilatory behavior as anything other than an attempt to manipulate the process. This, in turn, leads the Court to conclude that Mr. Kaeding can, with access to the internet and bank accounts, arrange to flee and not appear for Court. The Court therefore finds that the record of this case shows, by a preponderance of the evidence, that no

---

[2] Mr. Kaeding disputes that his trip to Colombia was flight. The Court finds otherwise, noting Mr. Kaeding's refusal to cooperate with Colombian authorities, attempts to obstruct his return to the United States, use of a passport with a name similar, but not equivalent to, his own, and false claim that he had vacated the Barranquilla apartment to meet his wife, when, it turned out, his wife never left the United States.

11

condition or combination of conditions short of detention will reasonably assure Mr. Kaeding's appearance for court when required.

Mr. Kaeding is also a "danger to the community," a term that can encompass financial, as well as physical, danger. The Court also finds that the record of this case shows, by clear and convincing evidence, that no condition or combination of conditions will reasonably ensure the safety of any other person or the community, and orders Mr. Kaeding detained on that ground as well.

"Potential 'danger to any person or the community' includes the risk that a defendant might cause financial or economic harm if granted pretrial release." *United States v. Dupree,* 833 F. Supp. 2d 241, 253 (E.D.N.Y. 2011) (quoting *United States v. Madoff*, 586 F. Supp. 2d 240, 252 (S.D.N.Y. 2009) ("The court may also consider 'economic harm' as evidence of dangerousness."); *United States v. Persaud*, No. 05-CR-368 (TJM), 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) ("economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); *see also United States v. Reynolds*, 956 F.2d 192, 193 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm."). One district court within the Eighth Circuit agrees with this line of cases. *United States v. Rojas*, No. 14-CR-4015 (MWB), 2014 WL 12691573, at *3 (N.D. Iowa, April 2, 2014) ("economic harm to the community may constitute community danger, particularly when there is a showing that defendant's fraudulent activity is ongoing or defendant has demonstrated a propensity to continue fraudulent activity" (citing *Reynolds* and *Madoff*)).

While the United States has not argued danger to the community as a predicate for Mr. Kaeding's detention, and while the first magistrate judge to review Mr. Kaeding's detention status foreswore use of the Bail Reform Act's dangerousness prong, this does not prevent this Court from ordering Mr. Kaeding detained on that ground. The Bail Reform Act states that if the "judicial officer finds" dangerousness or flight risk, that judicial officer "shall" order the defendant detained. 18 U.S.C. § 3142(e). The Act does not require that the prosecution argue a particular ground before the Court is allowed to order detention on that ground.

In this case, the superseding indictment is replete with examples, for which a grand jury found probable cause, of financial frauds perpetrated by Mr. Kaeding that placed the community at economic danger.

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. The Motion of Mr. Kaeding to reopen detention is **DENIED**. The detention order entered by this Court at Dkt. No. 28 remains in effect, supplemented by this Order's finding that by clear and convincing evidence, Mr. Kaeding presents a financial danger to any other person or the community.

2. Mr. Kaeding shall submit his memoranda in support of his dispositive suppression motions on or before October 20, 2023.

3. If Mr. Kaeding submits memoranda, the United States may (but need not) respond on or before November 3, 2023. The undersigned magistrate judge will then prepare a report and recommendation.

4. If Mr. Kaeding does not submit memoranda, the Court will closely review the pending motions and the file of this case. That review will form the basis for a report and recommendation on the motions.

Date: September 22, 2023              *s/ John F. Docherty*
                                     JOHN F. DOCHERTY
                                     United States Magistrate Judge